**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **TROY FULLER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:14-cv-01249-STA-egb** |
| | ) | |
| **TAMMY FORD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKIN IN GOOD FAITH,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Troy Fuller, a Tennessee state prisoner, has filed a petition under 28 U.S.C. § 2254 seeking habeas corpus relief ("Petition"). (Pet., ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.

## BACKGROUND

The following background summary is drawn from the state court record (St. Rec., ECF No. 8) and the state appellate court's recitation of the evidence presented at Fuller's trial. *See Fuller v. State,* No. W2010-02582-CCA-R3-PC, 2012 WL 2115563, at *1 (Tenn. Crim. App. June 12, 2012), *perm. appeal denied* (Tenn. Sept. 27, 2012).

### I. Petitioner's Trial and Delayed Direct Appeal

In 2007, Fuller was indicted by a Madison County, Tennessee, grand jury of aggravated rape, aggravated robbery, and violation of an order of protection, in connection with an incident involving his ex-girlfriend. *See id.* at *2. At Fuller's trial in 2008, the victim testified that on

March 2, 2007, she heard someone "creeping" in her house. *Id.* at *1. She walked into her living room to find the defendant, whom she had previously dated and against whom she had an order of protection. She asked Fuller why he was there and demanded that he leave. Fuller refused. The two struggled, and as the victim was trying to escape, the defendant trapped her into a corner with a table. Fuller then pulled out a knife and held it to the victim's neck and dragged her to her bedroom. While there, the defendant demanded that the victim take off the boxer shorts she was wearing. Afraid that he was going to hurt her, she complied. Fuller then forced her onto the bed, got on top of her, and while holding her down and pressing his arm against her throat, he penetrated her. After the defendant left, the victim picked up her daughter at school, and then called the police. She was taken to the hospital and a rape kit was collected. *Id.* at *1-2.

An officer from the Jackson Police Department, who had responded to the victim's call, testified that the condition of the victim's home was in disarray when he arrived and looked like a struggle had taken place. The back door appeared to have been forced open. A special agent with the Tennessee Bureau of Investigation testified that sperm from the rape kit matched the defendant's DNA profile. *Id.* at *2. Fuller took the stand and testified that, although he and the victim had been arguing in her living room on March 2, 2007, she had consensual sex with him in her bedroom. He also testified that he had believed that the order of protection had been dismissed. *Id.* at *3.

The jury convicted Petitioner of rape, aggravated criminal trespass, and violation of an order of protection. *Id.* The court held a sentencing hearing on October 14, 2008, at which Petitioner presented no evidence. *Id.*; *see also State v. Fuller*, No. W2013-01244-CCA-R3-PC, 2014 WL 1101869, at * 1 (Tenn. Crim. App. Mar. 19, 2014). He was sentenced as a Range I,

standard offender, receiving an effective sentence of twelve years' incarceration. *Fuller*, 2014 WL 1101869, at * 1. Petitioner, through counsel, failed to properly file a notice of appeal. *Fuller*, 2012 WL 2115563, at *3. Proceeding *pro se*, Fuller successfully secured permission to file a delayed appeal and to represent himself before the TCCA. *Id.* The TCCA affirmed the convictions, and the Tennessee Supreme Court denied permission to appeal. *Id.* at *1.

## II.  Post-conviction Proceeding

On December 3, 2012, the defendant filed a *pro se* petition for post-conviction relief. (P-C Pet., ECF No. 8-8 at 4-45.) After appointing counsel, the post-conviction court conducted an evidentiary hearing, at which Petitioner and his trial attorney testified. *Fuller*, 2014 WL 1101869, at *1-3. Upon consideration of the evidence, the court denied the petition. (Order Den. Pet., ECF No. 8-8 at 64-65.) Represented by counsel, Petitioner appealed the denial of his post-conviction petition. (P-C Appellant Br., ECF No. 8-16.) The TCCA rejected his arguments and affirmed the lower court's decision. *See Fuller*, 2014 WL 1101869, at *6.

## III.  Federal Habeas Petition

On September 24, 2014, Fuller filed his *pro se* § 2254 Petition, in which he asserts three claims and several sub-claims:

Claim 1:  Trial counsel was ineffective at sentencing by:

    A. Not reviewing the presentence report ("PSR") with the defendant until the morning of the sentencing hearing and not asking for a continuance to allow more time to review the PSR;

    B. Not objecting to the admission of the PSR at the sentencing hearing, despite mistakes in the PSR;

    C. Making a "deal" with the prosecution for the defendant to receive the maximum years of incarceration within Range I without telling the defendant; and

D.  Failing to investigate mitigating factors for sentencing.

(Pet., ECF No. 1 at 5, Pet. Ex. 1, ECF No. 1-1.)

Claim 2:  Trial counsel was ineffective by failing to file a notice of appeal from the judgment of conviction and sentence (Pet., ECF No. 1 at 7; Pet. Ex. 2, ECF No. 1-4.)

Claim 3: Petitioner was "[d]eni[ed] . . . effective appellate court review" when the "Court of Criminal Appeals did wrongfully" determine that Fuller had waived a challenge to his sentence.  (Pet., ECF No. 1 at 8; Pet. Ex. 8, ECF No. 1-8.)

## DISCUSSION

On July 5, 2016, Respondent filed the state court record and an answer to the Petition. (State Rec., ECF No. 8; Ans., ECF No. 9.)  She argues that the TCCA's determination that Petitioner's trial counsel did not render ineffective assistance was not contrary to, and did not involve, an unreasonable application of clearly established Supreme Court precedent.  (Ans., ECF No. 9 at 14-17.)  Petitioner's remaining claims, she contends, are procedurally defaulted. (*Id.* at 17-19.)  Fuller did not file a reply, though allowed to do so.  (*See* Order, ECF No. 3.)

### 1.  Legal Standards

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the AEDPA.  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A § 2254 claim challenging the petitioner's custody or sentence on state-law grounds thus fails to state a federal habeas claim.  *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (writ of habeas corpus may not issue "on the basis of a perceived error of state law") (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A state court's factual determination is not "unreasonable" for purposes of § 2254(d)(2) merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quotation marks and citation omitted). State-court factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, --- F. App'x ----, 2017 WL 2241814, at

*5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted)).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), but "proper[]" exhaustion. *Boerckel*, 526 U.S. at 848. A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 848; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly" exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845, 848.

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state

courts. *Id.* at 848. Broadly speaking, procedural default happens in two ways. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to "fairly present" the claim through "one complete round" of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules has closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). *See also Boerckel*, 526 U.S. at 846, 848. Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

It is only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," that a federal court will review the merits of a claim that was procedurally defaulted. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### 2. Claims 1A and 1B

On appeal from the denial of his post-conviction petition, Fuller asserted that the lower court erred in concluding that his attorney had not been ineffective at sentencing by (1) waiting until the day of the hearing to review the PSR with him, but deciding not to ask for a continuance in order to more fully review the PSR, and (2) deciding not to object to the admission of the PSR which contained several errors. (P-C Appellant Br., ECF No. 8-16 at 16-17; *Fuller*, 2014 WL

1101869, at *3.)  The TCCA rejected the arguments and affirmed the lower court's determinations.  *Fuller*, 2014 WL 1101869, at *6.  Petitioner now insists that the TCCA's decision is wrong and he is thus entitled to federal habeas relief.

A claim that the ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense."  *Id.*  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance."  *Id.* at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a court reviews an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

In addressing Fuller's ineffective assistance claims, the TCCA reviewed the testimonies presented at the post-conviction hearing and refused to disturb the post-conviction court's factual findings. *Fuller*, 2014 WL 1101869, at *6. The appellate court then expressly applied *Strickland*'s standards to those facts. *Id.* at *4, 6.

The TCCA concluded that Petitioner's trial attorney had not rendered ineffective assistance by waiting until the day of sentencing to review the PSR with him and then deciding against requesting a continuance, and by deciding not to object to the errors in the PSR. The TCCA first found that counsel's performance was not deficient:

> [C]ounsel testified that the presentence report was hand delivered to his office at least a week prior to the sentencing hearing. Counsel agreed that the Petitioner may have pointed out a few minor errors on the presentence report, but testified that none of the errors would have impacted the length of the Petitioner's sentence. He advised the Petitioner against seeking a continuance to review and correct the presentence report because the Petitioner was going to be sentenced within Range I, which counsel believed was a "big deal" based on the Petitioner's criminal record. Further, the Petitioner admitted that he did not tell counsel to object to the presentence report and he chose not to testify at the hearing. Based on this testimony and evidence, we conclude that counsel's decision not to object or move for a continuance was a tactical decision based on adequate preparation

and was well "within the wide range of reasonable professional assistance." *See Burns*, 6 S.W.3d at 462.

*Id.* at *6.

The TCCA then found that Petitioner "failed to establish that he was prejudiced in any way by counsel's performance":

> As an initial matter, we note that the Petitioner did not include the presentence report in the record for our review. Additionally, although he testified at the post-conviction hearing that the report contained numerous errors, he put forth no evidence to establish that any of the information in the report was incorrect and refused to answer any questions from the post-conviction court regarding the accuracy of the report and the prior convictions listed. Counsel, on the other hand, testified that any errors in the report were minor in nature and would not have impacted the length of the Petitioner's sentence. Based on this record and the testimony at the post-conviction hearing, we conclude that the Petitioner failed to establish by clear and convincing evidence that he was prejudice by the admission of the presentence report. Accordingly, the Petitioner is not entitled to relief.

*Id.*

Petitioner has not shown that he is entitled to relief under the AEDPA on Claims 1A and 1B. First, the TCCA's ineffective-assistance determinations were not "contrary to" *Strickland*, 28 U.S.C. § 2254(d)(1), because the TCCA expressly invoked *Strickland* and applied its two-part test to the facts. *See Williams*, 529 U.S. at 406 (A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Second, the TCCA's holdings were not based on an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2). The post-conviction court's factual determinations, which the TCCA refused to disturb, are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Moritz*, 2017 WL 2241814, at *5. Fuller has not pointed to any such evidence.

Finally, the TCCA's determinations were not based on an unreasonable application of *Strickland*'s standards to the facts adduced at the post-conviction hearing. *See* 28 U.S.C. § 2254(d)(1). As the TCCA recognized, the attorney's decisions regarding the PSR were strategic choices. *Fuller*, 2014 WL 1101869, at *6. The Court in *Strickland* made clear that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. Petitioner did not show that his attorney's decisions were based on incomplete information or legal error. In particular, he did not identify in the post-conviction proceedings, and does not identify here, exactly what information in the PSR, beyond minor errors, his attorney should have realized was incorrect. The TCCA's determination that counsel's strategic decisions did not reflect deficient performance is therefore objectively reasonable. Petitioner's failure to show more than minor errors in the PSR also supports the TCCA's conclusion that no prejudice has been shown.

Because the TCCA's ineffective assistance determination is not contrary to clearly established Supreme Court law, based on an unreasonable determination of the facts, or resulted from an unreasonable application of clearly established law to the facts, Claims 1A and 1B are **DENIED**.

### 3. Claims 1C, 1D, and 2

In Claim 1C, Petitioner alleges that his trial counsel rendered ineffective assistance by making a sentencing "deal" with the prosecution without his knowledge and consent. (Pet. Ex. 1, ECF No. 1-1 at 2, 4.) He asserts in Claim 1D, without elaboration, that his attorney was ineffective by failing to investigate mitigating evidence for sentencing. (*Id.* at 4.) In Claim 2, he alleges that his trial counsel rendered ineffective assistance by failing to file a notice of appeal from the judgment of conviction and sentence. (Pet. Ex. 2, ECF No. 1-4.)

Fuller did not raise any of these ineffective assistance claims on appeal to the TCCA, *see* P-C Appellant Br., ECF No. 8-16, and the time allowed under state law for him to present them to the state courts has passed. *See* Tenn. Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.") Petitioner thus procedurally defaulted the claims. *See Boerckel*, 526 U.S. at 846. Petitioner does not assert cause and prejudice to excuse the defaults, or actual innocence to overcome them.

Claims 1C, 1D, and 2 are therefore **DENIED** as procedurally defaulted. [1]

### 4. Claim 3

On appeal from denial of his post-conviction petition, Fuller asserted a due process claim stemming from the omission of the PSR from the record on review for the delayed appeal. (P-C Appellant Br., ECF No. 8-16 at 17.) The TCCA "decline[d] to address [the] issue" because Petitioner "failed to include any of the relevant documents in the record for [the court's] review, and . . . failed to cite any law in support of his contention." *Fuller*, 2014 WL 1101869, at *3 n. 1. Petitioner now asserts the due process claim as Claim 3 of his § 2254 Petition. Respondent argues that the claim is not reviewable in this federal habeas proceeding because Fuller procedurally defaulted it at the state level. The Court agrees.

In Tennessee, a party waives a claim on appeal by "fail[ing] to provide the [the appellate] court with an adequate record upon which to review [the] claim[], . . . and to support [the] argument with citations to authorities." *Bates v. State*, No. E-2009-00781-CCA-R3-PC, 2009 WL 4638487, at *2 (Tenn. Crim. App. Dec. 8, 2009) (citing *State v. Ballard*, 855 S.W.2d 557,

---

[1] Even if Petitioner had not procedurally defaulted Claim 2, it is without merit. There was no prejudice resulting from his attorney's failure to properly file a notice of direct appeal, as Fuller was subsequently granted a delayed appeal.

560-61 (Tenn. 1993) (the appellant's failure to provide the court with a complete record relevant to the issues presented for review constituted a waiver of the issue) and Tenn. R. App. P. 24(b) (setting forth requirements for record on appeal)). *See also* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

Tennessee's waiver rule is an independent and adequate state procedural ground. *Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013). Absent a showing of cause and prejudice or actual innocence, a state appellate court's application of the rule will bar federal habeas review of a claim. *See id.* (federal habeas review of petitioner's claim was barred where Tennessee appellate court refused to decide merits of claim because it was not "support[ed] . . . with argument or citation to authorities" in violation of Tenn. Ct. Crim. App. R. 10(b)).

Petitioner has not asserted cause and prejudice to excuse the default or actual innocence to overcome it. Claim 3 is therefore **DISMISSED** as procedurally defaulted.

For all of these reasons, the § 2254 Petitioner is **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253 (c) (2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322,

336 (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)).  If the district court rejects a claim on a procedural ground, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478.

In this case, reasonable jurists would not debate the correctness of the Court's procedural rulings or its denials of certain claims on the merits.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.

It is so ORDERED.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 11, 2017.